UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE CLARK,

        Plaintiff,

v.

OAKLAND COUNTY, et al.

        Defendants.
_____/

Case No. 08-14824

HON. SEAN F. COX
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [Doc. No. 46]

Plaintiff Willie Clark ("Clark") filed this § 1983 action on November 17, 2008 against Defendants Waterford Township, Michigan ("Waterford" or "the Township"), and Waterford Police Officer Tom Bowen ("Bowen") (collectively, "the Waterford Defendants"), Oakland County, Michigan, the Oakland County, Michigan Circuit Court, and the Oakland County, Michigan, Jail. The matter is currently before the Court on the Waterford Defendants' motion for partial summary judgment [Doc. No. 46].[1] The parties have fully briefed the issues, and the Court declines to hold oral argument pursuant to E.D. MICH. L.R. 7.1(f)(2). For the reasons that follow, the Court **GRANTS IN PART** the Waterford Defendants' motion [Doc. No. 46].

BACKGROUND

Consistent with the requirements of FED. R. CIV. P. 56, the following are the relevant facts of this matter, taken in the light most favorable to the non-moving party, Mr. Clark.

On November 16, 2006, the Waterford Police department dispatched several patrol cars

---

[1] The Oakland County Circuit Court and Oakland County Jail were voluntarily dismissed as defendants to this action on April 21, 2009. [*See* Doc. No. 12]. Oakland County, Michigan is not a party to this motion brought by the Waterford Defendants.

1

to 854 Village Green, Apt. 3101 to investigate a report that individuals were pounding on apartment doors and talking about a gun. [*See* Police Report, Pl's Ex. C, Doc. No. 50]. Though not entirely clear from the documents provided by the parties, officers apparently found reason to knock on the door to Clark's apartment - located at 854 Village Green, Apt. 3099.

Clark alleges that he answered a knock at his apartment door, and that when he opened the door two police officers were standing directly outside. One of those officers, Clark alleges, was Officer Bowen:

> Q: Do you know who the two officers [were]?
> A: I know one name is - - like I seen his name tag, it was Officer Bowen, and the other one I could not see his name tag, so I really couldn't say his name at this time, I didn't see it.

[Clark Dep., Def.'s Ex. A, Doc. No. 50, p.42].

Clark testified as follows at his deposition regarding the circumstances underlying his encounter with the police:

> Q: How did you know that the police were there [outside your door]?
> A: Um, I came to my door, like I heard a knock on the door, and then I came to the peek hole, and then I opened the door for them and they - - like I could see it was the police. I could tell by the uniform[s].
> Q: So you opened the door, who was the first person to say anything?
> A: It was Officer Bowen - - Bowman or - - or I think I'm pronouncing his name correctly, Bowman or Bowen.
> Q: Okay. What does he say?
> A: Um, he said that they had a complaint of loud music. And then I said well, that's not me. He asked some more questions, and I tried to answer all of his questions, and at that time, after I got done, I tried to close my door, and then they proceeded to use force and just come through my apartment.

*Id*. at pp.43-44. Elaborating on his encounter with the officers, Clark further testified as follows:

> Q: . . . [W]hat do you tell the officers?
> A: When, at the door or?
> Q: Yeah, at the door.

> A: Um, they, you know, they, um, they was asking [*sic*] about the music, and I said, you know, it could be the guy downstairs because this unit has three floors. There's like a first floor, second floor, third floor. I stayed on the third floor. And I said well, maybe you have the wrong apartment because it's not me, and I just told him, you know, it was not me at that time. No, I'm sorry, like you got the wrong person.
>
> A: How did they respond to that?
>
> Q: Um, I could see that they were very upset, very angry, you know, like I'm trying to, you know, like I'm trying to answer their questions, you know, as to the best of my ability, but they seemed to get very agitated, upset and hot.

*Id*. at pp.45-46. Clark further alleges that, once the officers' questions were complete, he went to close his apartment door. At that point, Clark alleges that the officers - led by Officer Bowen - forced their way into his apartment:

> A: . . . as I proceeded to close my door, they kicked it or shoved it and, you know, it pressed me back into my closet, and when they came in, it was force and they hit me in the chest, and then when he got in, Officer Bowman (sic) grabbed me, and like I got a kitchenette, he put me up against the wall. He put his hand on his weapon and told me to don't move [*sic*] as the other officer proceeded to go through my apartment and search it.

*Id*. at pp.53-54.

In support of their motion for summary judgement, the Waterford Defendants do not explain the details behind their initial decision to knock on Clark's apartment door. Further, the Waterford Defendants provide no evidence that they had a warrant to search Clark's apartment, nor do they provide evidence that they had an arrest warrant for Clark at the time they knocked on his apartment door. The Waterford Defendants also provide no evidence of exigent circumstances justifying their warrantless entry into Clark's apartment.

After the officers entered Clark's apartment and Officer Bowen detained Clark in his kitchen, another officer searched Clark's apartment without Clark's consent. [Clark Dep., Pl.'s

3

Ex. A, Doc. No. 50, pp.40, 45, 47, 114]. In the course of this search, officers recovered Clark's identification, which was entered into the police LEIN system - returning information that Clark had an open bench warrant out of the 48th District Court of Michigan.[2] Clark was therefore arrested and taken into custody on the outstanding bench warrant.

In support of their motion for summary judgment, the Waterford Defendants offer Officer Bowen's deposition testimony, in which Officer Bowen testified that he was not present at Clark's apartment until after other officers had already secured entry into the apartment and placed Clark under arrest:

> Q: How did it come about that you located Willie Clark?
> A: I did not locate him. Other officers did.
> Q: Who located Willie Clark?
> A: I am not one hundred percent sure who was the first officer that located him.
> Q: When you first encountered Willie Clark, were you outside his apartment or inside his apartment?
> A: I believe we were inside his apartment.
> Q: Well, how did it come about that you ended up inside Willie Clark's apartment, you?
> A: Me?
> Q: Yes.
> A: Other officers were inside the apartment.
> Q: I'm not asking about them. How did it come about that you ended up inside his apartment?
> A: I walked into his apartment.
> Q: Why did you walk in?
> A: Because other officers were already inside.
> \*\*\*\*\*
> Q: How long had - - had the other officers been in Willie Clark's apartment some time prior to you walking in?
> A: Yes, the other officers were inside his apartment before I arrived.

[Bowen Dep., Def.'s Ex. 4, Doc. No. 46, pp.41-42].

---

[2] This bench warrant, it was later discovered, had been issued in error. This Court has already granted Officer Bowen qualified immunity on Clark's false arrest cause of action, however, as the officers on the scene had no knowledge that the warrant had been issued in error. [*See* Doc. No. 30, pp.5-8].

The Waterford Defendants offer no corroborating evidence supporting Officer Bowen's testimony that he was not present at the time other officers entered Clark's apartment. Inasmuch as there is a factual dispute regarding whether Officer Bowen was present at Clark's apartment at the time Clark first opened his apartment door, for purposes of this motion this Court is required under FED. R. CIV. P. 56(c) to construe all disputed facts in the light most favorable to Clark - i.e., that Officer Bowen *was* present when Clark first opened his apartment door.

The Waterford Defendants filed their instant motion for summary judgment on May 13, 2010 [Doc. No. 46]. In that motion, they advance four primary arguments: 1) that Clark's § 1983 Fifth Amendment claims should be dismissed; 2) that Clark's *Monell* claim against the City of Waterford should be dismissed: 3) that Clark's § 1983 Fourth Amendment claims should be dismissed; and 4) that Clark's state-law Assault & Battery claim is barred by the statute of limitations. Clark concedes that his Fifth Amendment and *Monell* claims should be dismissed for lack of evidentiary support, but opposes the remainder of the Waterford Defendants' motion [*see* Doc. No. 50].

STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*

5

*v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

ANALYSIS

In their instant motion [Doc. No. 46], the Waterford Defendants argue for dismissal of all Clark's causes of action against them. For the reasons that follow, the Court **GRANTS** their motion **IN PART**, dismissing Clark's Fifth Amendment [Count V], *Monell* [Count VII], and Assault & Battery [Count III] causes of action. The Court **DENIES** the Waterford Defendants' motion with respect to Clark's Fourth Amendment cause of action [Count V], however.

I. Clark's § 1983 Fifth Amendment and *Monell* Claims [Counts V, VII].

Count V of Clark's Amended Complaint [Doc. No. 4] alleges a cause of action under 42 U.S.C. § 1983 against Officer Bowen for violation of Clark's Fifth Amendment rights. Further, Count VII of Clark's Amended Complaint [Doc. No. 4] alleges a cause of action under 42 U.S.C. § 1983 against the City of Waterford for municipal liability under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). In his response brief, Clark concedes that "he is without sufficient evidence" to sustain these causes of action. [*See* Pl.'s Br., Doc. No. 50, p.5]. Dismissal of Clark's Fifth Amendment and *Monell* claims is therefore proper, and for this reason the Court **GRANTS** the Waterford Defendants' motion for summary judgment with respect to these causes of action.

II. Clark's § 1983 Fourth Amendment Claims [Count V].

Count V of Clark's Amended Complaint [Doc. No. 4] alleges a cause of action under 42 U.S.C. § 1983 against Officer Bowen for violation of Clark's Fourth Amendment right against

6

unreasonable searches and seizures. In support of their instant motion, the Waterford Defendants argue that, as Officer Bowen alleges he was "merely present at the scene" on the night Clark was arrested, he is entitled to qualified immunity. [*See* Def.'s Br., Doc. No. 46, pp.6-9]. The Court disagrees, and therefore **DENIES** the Waterford Defendants' motion with respect to this issue.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In assessing qualified immunity inquiries, federal courts, viewing the facts in the light most favorable to the plaintiff, evaluate: 1) whether the violation of a constitutional right has occurred; and 2) whether the constitutional right at issue "was clearly established at the time of the defendant's alleged misconduct." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Supreme Court, in *Pierson v. Callahan*, 129 S.Ct. 808, 818 (2009), granted courts the discretion to conduct this two-step analysis in the manner most appropriate to the case before them. *See also Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009).

The Sixth Circuit, in *Ghandi v. Police Dep't of Detroit*, 747 F.2d 338 (6th Cir. 1984), held that officers who are merely at the scene of an allegedly unconstitutional search - and who play no direct role in a § 1983 plaintiff's alleged constitutional violations - are entitled to qualified immunity:

> Police officers enjoy a qualified or "good faith" immunity from suit for damages. As a general rule, mere presence at the scene of a search, without a showing of direct responsibility for the action, will not subject an officer to liability.

*Ghandi*, 747 F.2d at 352 (internal citations omitted). Applying this holding to the facts of that case, the *Ghandi* court upheld the district court's grant of qualified immunity for the officers involved:

> In sum, the record contains no evidence that the uniformed police officers acted outside the scope of their qualified immunity. *They had no direct involvement in the search*. Their only function was to insure the integrity of the search by having uniformed officers visible at the scene. Thus, the district court was correct in granting summary judgment in favor of the uniformed police officers.

*Id*. (emphasis added).

The Sixth Circuit elaborated upon *Ghandi* in *Aquisto v. Danbert*, 1998 WL 661145 (6th Cir. Sept. 1, 1998). In that case, the Sixth Circuit noted that "the plaintiff has not challenged the description given by officers. . . of the nature and extent of their involvement," and that "it was undisputed that Danbert did not personally participate" in the alleged violation of the plaintiff's Fourth Amendment rights. *Aquisto*, 1998 WL 661145, *1-2. In upholding the district court's grant of qualified immunity for the officer involved in *Aquisto*, the Sixth Circuit held as follows:

> To establish a *prima facie* case against Danbert, the plaintiff had to show a personal involvement on his part going beyond "mere presence" or "mere backup." See *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991) (holding that an officer could be liable for abusive conduct of other officers because his involvement in initiating and conducting an apartment search exceeded "mere presence" or "mere backup"). *No such showing was made here; Danbert was present as backup and nothing more*. His actions did not violate Ms. Aquisto's rights at all, much less amount to violations of clearly established rights of which a reasonable officer would have known.

*Aquisto*, 1998 WL 661145, *3 (emphasis added).

The *Aquisto* court did, however, deny qualified immunity for another of the officers involved in the search of that plaintiff's home. Unlike Officer Danbert, that officer - Officer Vesco - *was directly involved in the search the plaintiff claimed was unconstitutional*:

8

> Vesco's situation is not comparable to Danbert's. Vesco entered the house, his gun drawn, immediately after the door was breached. *Taking the facts in the light most favorable to the plaintiff*, we conclude that Vesco is not entitled to qualified immunity on the wrongful entry claim.

*Aquisto*, 1998 WL 661145, *4 (emphasis added). Thus, *Ghandi* and *Aquisto* stand for the proposition that officers who are "merely at the scene" of an unconstitutional search, or are only assisting as backup, are entitled to qualified immunity - but officers directly involved in the alleged unconstitutional behavior are not.

> Relying upon both *Aquisto* and *Ghandi*, the Waterford Defendants argue as follows:
>
> In the present case, Plaintiff cannot establish a violation of his constitutional rights by Officer Bowen because Officer Bowen was not directly responsible for and did not participate in the alleged unlawful entry or search of Plaintiff's house. Officer Bowen was not the original car to be dispatched to the location, and was merely assisting as backup. When Officer Bowen arrived, there were two other officers that had entered the Plaintiff's apartment. Officer Bowen testified that the officers were already in the apartment when he arrived, so he is unaware of the circumstances surrounding their entry.

[Def.'s Br., Doc. No. 46, p.8]. The Waterford Defendants further elaborate as follows:

> Officer Bowen did not participate in the alleged forced entry or search of the premises, which is why his report does not include anything that transpired between Willie Clark and the other officers. Officer Bowen's mere presence at the scene, without a showing of direct responsibility for the alleged unlawful entry and search, cannot subject him to liability.

*Id.* at p.9. Therefore, the Waterford Defendants argue, Officer Bowen is entitled to qualified immunity on Clark's § 1983 action.

The Court disagrees. In evaluating the instant motion, as noted by Clark in his response brief, "the facts are taken as alleged by the plaintiff." [Pl.'s Br., Doc. No. 50, p.8]. Unlike *Aquisto*, where the alleged involvement of the officer defendants was not disputed, here Clark *does* dispute the level of involvement of Officer Bowen in the search of his home. While Officer

9

Bowen alleges that he was not present at Clark's apartment when the initial officers at the scene entered his apartment, Clark alleges that it was *Officer Bowen himself* who knocked on his door, and that it was Officer Bowen who violated Clark's Fourth Amendment rights by entering his apartment.

Again, pursuant to FED. R. CIV. P. 56(c), this Court is required to construe all disputed facts in the light most favorable to the non-moving party to this motion - here, Mr. Clark. As Clark's version of the events of November 16, 2006 indicates that Officer Bowen was not only involved, but arguably was the *lead officer* responsible for Clark's Fourth Amendment claims. Qualified immunity for Officer Bowen under *Ghandi* and *Aquisto* is therefore improper.

Though not directly briefed by the parties, the Court also holds that, taking the facts in the light most favorable to Mr. Clark, Officer Bowen is not entitled to qualified immunity under the usual qualified immunity analysis. "Searches and seizures inside a home without a warrant are presumptively unreasonable." *Schreiber v. Moe*, 596 F.3d 323, 330 (6th Cir. 2010), quoting *Michigan v. Fisher*, - - U.S. - -, 130 S.Ct. 546, 548 (2009). While that presumption can potentially be overcome under exigent circumstances, *see Id.*, no such exigent circumstances are alleged by the Waterford Defendants in this case.

The Sixth Circuit has held that warrantless searches, conducted without probable cause or exigent circumstances, are violations of a suspect's clearly established Fourth Amendment rights. *See, e.g., United States v. Purcell*, 526 F.3d 953, 960 (6th Cir. 2008); *United States v. Davis*, 514 F.3d 596, 607 (6th Cir. 2008). For these reasons, the Court **DENIES** the Waterford Defendants' motion for summary judgment, seeking qualified immunity for Officer Bowen on Clark's Fourth Amendment claims [Count V].

III. Clark's Assault & Battery Cause of Action [Count III].

Count III of Clark's Amended Complaint [Doc. No. 4] alleges a cause of action against Officer Bowen for Assault & Battery under Michigan state law. In their motion for judgment on the pleadings, the Waterford Defendants argued that Clark's Amended Complaint naming Officer Bowen as a defendant to this cause of action was in violation of Michigan's statute of limitations for such actions, and that Clark's Amended Complaint did not relate back to his original complaint under FED. R. CIV. P. 15(c). [*See* Def.'s Br., Doc. No. 16, pp.12-16]. On the evidence presented to the Court in that prior motion, and relying upon *Daily v. Monte*, 26 F.Supp.2d 984 (E.D. Mich. 1998), the Court held that substituting Officer Bowen's name for the "John Doe" police officer named in Clark's original complaint was proper under Rule 15(c).

In their instant motion, the Waterford Defendants again raise the Rule 15(c) issue before the Court. [*See* Def.'s Br., Doc. No. 46, pp.9-13]. In light of new case law brought forth by the Waterford Defendants in support of this motion, however, the Court reverses its prior holding, and **GRANTS** summary judgment on Clark's Assault & Battery claim [Count III].

The events leading to Clark's arrest in this matter occurred on November 16, 2006. Two years later - on November 17, 2008 - Clark filed his initial complaint in this action, alleging, among others, a cause of action for Assault & Battery [Count III] against a "John Doe" officer Clark claims assaulted him on the night of his arrest. Both parties agree that Clark's Amended Complaint [Doc. No. 4] specifically naming Officer Bowen runs afoul of Michigan's two-year statute of limitations, M.C.L. § 600.5805(2), unless Clark's Amended Compliant "relates back" to his original complaint under FED. R. CIV. P. 15(c). [*See* Def.'s Br., Doc. No. 46, p.9; Pl.'s Br., Doc. No. 50, p.10]. Therefore, the only issue for the Court to decide - i.e., the "relation-back"

11

issue - is one of law.

In support of their original motion for judgment on the pleadings [Doc. No. 16], the Waterford Defendants relied primarily upon the Sixth Circuit's holding in *Cox v. Treadway*, 75 F.3d 230 (6th Cir. 1996). [*See* Def.'s Br., Doc. No. 16, pp.14-15]. *Cox* held that the substitution of a named officer in place of an originally sued "John Doe" officer was not properly considered a "mistake" under Rule 15(c):

> The naming of "unknown police officers" in the original complaint does not save the pleading. Substituting a named defendant for a "John Doe" defendant is considered a change in parties, not a mere substitution of parties.

*Cox*, 75 F.3d at 240. In light of this holding, the Waterford Defendants argued as follows in their prior motion for judgment on the pleadings:

> Sixth Circuit precedent clearly holds that new parties may not be added after the statute of limitations has run, and that such amendments do not satisfy the "mistaken identity requirement. . . .

[Def.'s Br., Doc. No. 16, pp.14-15].

In denying the Waterford Defendants' prior motion for judgment on the pleadings, the Court relied primarily upon the Eastern District of Michigan's holding in *Dailey v. Monte*, 26 F.Supp.2d 984 (E.D. Mich. 1998). *Dailey* went to great lengths to discredit the Sixth Circuit's prior holding in *Cox*, including a notation that certain portions of the *Cox* holding conflicted with the Sixth Circuit's prior holding in *Berndt v. State of Tennessee*, 796 F.2d 879 (6th Cir. 1986). *See Dailey*, 26 F.Supp.2d at 986. Relying upon *Dailey* - and its holding widely criticizing *Cox* as contrary to prior Sixth Circuit precedent - the Court denied the Waterford Defendants' motion for judgement on the pleadings on this issue. [*See* Doc. No. 30, p.16].

In so ruling, this Court's prior holding joined what another court in this circuit recently

12

commented may be "a split in the Sixth Circuit on this point." *See Williams v. TDL America Corp.*, 2010 WL 456869, *3 (W.D. Ky. Feb. 3, 2010). This arguable split within the Sixth Circuit is representative of the varying outcomes other circuits have arrived at on the issue of "John Doe" defendants and Rule 15(c). *See, e.g.,* Rebecca S. Engrav, Comment, *Relation Back of Amendments Naming Previously Unnamed Defendants Under Federal Rule of Civil Procedure 15(c)*, 89 Cal. L. Rev. 1549, 1571-72 (2001).

During the prior motion for judgement on the pleadings, however, the parties did not make the Court aware of a more recent Sixth Circuit unpublished opinion on the issue - though in all fairness to the parties, the Court's own independent legal research during the prior motion also failed to uncover the opinion. In *Moore v. State of Tennessee*, 2008 WL 564946 (6th Cir. Mar. 3, 2008), the Sixth Circuit held that a detainee's § 1983 suit against several named prison guards did not relate back to his original complaint that named "John Doe" guards as defendants. In so doing, the Sixth Circuit panel in *Moore* reaffirmed the continuing viability of *Cox*:

> Our circuit precedent is fatal to Moore's argument [for relation back under Rule 15(c)]. In this court, a plaintiff's lack of knowledge pertaining to an intended defendant's identity does not constitute a "mistake concerning the party's identity" within the meaning of Rule 15(c). *See Cox v. Treadway*, 75 F.3d 230, 240 (6 Cir. 1996). . . Nor are we alone in so holding - our court's precedent comports with no fewer than seven of our sister circuits.

*Moore*, 2008 WL 564946, *5.

Of course, *Moore*, as an unpublished opinion of the Sixth Circuit, is not necessarily binding on this Court. *Moore* is, however, highly persuasive authority for how the Sixth Circuit would so rule if the issue of "John Doe" defendants and Rule 15(c) relation back were to be reconsidered. At the very least, the *Moore* panel deemed *Cox* still deserving of precedential credence. Given *Moore*'s reaffirmation of the continuing viability of *Cox*'s central holding, this

13

Court defers to the sound judgment of the Sixth Circuit in deciding *Moore*.

As such, in the instant case, the Court reverses its prior ruling on the Rule 15(c) relation back issue, and **HOLDS** that Clark's Amended Complaint substituting Officer Bowen for the previously named "John Doe" Waterford Police officers does not relate back to Clark's original complaint. The Court therefore **GRANTS** the Waterford Defendants' motion for summary judgment on this issue, and **DISMISSES** Clark's Assault & Battery claim [Count III].

CONCLUSION

For the reasons described above, the Court **GRANTS IN PART** the Waterford Defendants' motion [Doc. No. 46], **DISMISSING** Count III of Clark's Complaint for Assault & Battery against Officer Bowen, Count V of Clark's Complaint for Fifth Amendment violations against Officer Bowen under § 1983, and Count VII of Clark's Complaint for *Monell* liability against the City of Waterford. The Court **DENIES** the remainder of the Waterford Defendants' motion [Doc. No. 46].

**IT IS SO ORDERED.**

                                    S/Sean F. Cox
                                    Sean F. Cox
                                    United States District Judge

Dated: July 22, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on

July 22, 2010, by electronic and/or ordinary mail.

                                                              S/Jennifer Hernandez
                                                              Case Manager